### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

COLUMBIA AIRCRAFT SALES, INC.,
　　　　*Plaintiff*,

　　v.　　　　　　　　　　　　　　　　No. 3:20-cv-00701 (JAM)

PIPER AIRCRAFT, INC.,
　　　　*Defendant*.

### ORDER GRANTING MOTION TO TRANSFER

This case involves a dispute about the non-renewal of a commercial dealership agreement. The plaintiff is a dealer for the defendant aircraft company. When the defendant decided not to renew the parties' dealer agreement, the plaintiff filed this action seeking relief. The defendant now moves pursuant to 28 U.S.C. § 1404 to transfer the action to the Southern District of Florida in accordance with a forum-selection clause within the parties' dealer agreement. Because I conclude that all of plaintiff's claims are within the scope of the forum-selection clause and that it would not be unreasonable or unjust to enforce the parties' agreement to the forum-selection clause, I will grant the motion to transfer.

#### BACKGROUND

Defendant Piper Aircraft, Inc. ("Piper") is a manufacturer of general aviation aircraft and sells its products nationwide through licensed dealers. Doc. #33 at 5 (¶ 14). Plaintiff Columbia Aircraft Sales, Inc. ("Columbia") has been the exclusive dealer for Piper's products in the northeastern region of the United States for over 30 years. *Id.* at 5 (¶ 16). Throughout this time, Columbia and Piper have operated their relationship through a succession of term-limited dealer agreements. *Id.* at 5 (¶ 18).

The parties entered into their most recent dealer agreement on January 1, 2016 ("Dealer Agreement"). *Id.* at 6 (¶ 19). Section 2.2 of the Dealer Agreement provides that it would run for a period of four years, and that it would automatically renew unless either party delivered a written non-renewal notice at least one year prior to the end of the term. *Id.* at 6 (¶ 21). Upon delivery of such a non-renewal notice, Section 2.2 required that the parties nonetheless "negotiate in good faith and attempt to agree upon mutually acceptable terms and conditions for a Renewal Term." *Id.* at 6 (¶ 22). Piper had previously complied with this procedure during the course of the parties' relationship, resulting in the parties' most recent Dealer Agreement in 2016. *Id.* at 7 (¶ 23).

During a conference call on October 16, 2018, Piper told Columbia and other dealer principals that Piper was going to issue a non-renewal notice. *Id.* at 20 (¶ 70). Piper stated that the notice was a "formality" and was issued "only because Piper sought to simplify its dealer agreements." *Ibid.*

On November 26, 2018, Piper sent Columbia the non-renewal notice. *Id.* at 19 (¶ 67). The notice stated that Piper would "evaluate all existing Agreements and will discuss with you our future business strategies and plans," emphasizing that the process would be "collaborative." Doc. #33, Ex. 1. Piper added that the new dealer agreements would be distributed to future dealer partners in the third quarter of 2019. *Ibid.*

But on May 29, 2019, Piper told Columbia that Piper had decided not to renew the Dealer Agreement, and later sent Columbia a letter confirming Piper's position. Doc. #33 at 22 (¶¶ 78, 81). Columbia alleges that Piper led it to believe that a renewal agreement would be forthcoming but had no intention to renew. *Id.* at 20-23 (¶¶ 69-72, 82).

Columbia has filed this action alleging contract claims (for breach of contract and breach of the implied covenant of good faith and fair dealing), as well as additional common law claims (for promissory estoppel, fraudulent inducement, fraud, and negligent misrepresentation) and additional statutory claims (under the Connecticut Franchise Act ("CFA") and the Connecticut Unfair Trade Practices Act ("CUTPA")). Doc. #33. On the basis of a forum-selection clause within the Dealer Agreement, Piper has moved to transfer this action to the Southern District of Florida. Doc. #36.

## DISCUSSION

Piper relies on a forum-selection clause contained within the Dealer Agreement. That clause states:

> The parties irrevocably and unconditionally submit to the exclusive jurisdiction of the courts of the State of Florida, located in Palm Beach County or in the United States District Court for the Southern District of Florida for the purposes of any suit, action or other proceeding arising out of this Agreement or the subject matter hereof brought by any party hereto.

Doc. #36-1 at 8.

On the basis of this forum-selection clause, Piper moves to transfer to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). That statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

A forum-selection clause may be enforced through a motion to transfer under § 1404(a). *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Because the enforcement of a valid forum-selection clause "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," and because the "overarching consideration under § 1404(a) is whether a transfer would promote

3

'the interest of justice,'" such a clause should be given controlling weight "in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

For cases involving a section 1404 motion to transfer due to a valid forum-selection clause, the Supreme Court has instructed that courts should alter the usual analysis for a section 1404 motion in three ways. *Id.* at 63. First, courts should afford no weight at all to the plaintiff's initial choice of forum if it differs from the agreed-upon forum. Instead, the plaintiff bears the burden of establishing why the case should *not* be transferred to the agreed-upon forum. *Id.* at 63-64. Second, courts should not consider arguments about the parties' private interests and convenience because, in deference to the parties' agreement, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Ibid.*

To determine whether a forum-selection clause is enforceable, a court must resolve the following three issues: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive . . . ; and (3) whether the claims and parties involved in the suit are subject to the forum-selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). If the forum-selection clause meets all three requirements, it is presumptively enforceable. *Ibid.* This presumption can only be overcome by "making a

sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Ibid.*

Columbia does not dispute that the forum-selection clause was reasonably communicated to Columbia in the Dealer Agreement. Nor does Columbia dispute that the forum-selection agreement has mandatory terms; it requires the parties to "irrevocably and unconditionally submit to the exclusive jurisdiction of . . . the Southern District of Florida." Columbia instead focuses on the third requirement, arguing that the forum-selection clause is narrow and does not encompass its non-contract claims.

To evaluate the scope of the forum-selection clause, I must apply the law chosen by the parties. *See Martinez*, 740 F.3d at 217-18. The Dealer Agreement's choice-of-law clause provides that it "shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to principles of conflict of laws." Doc. #37-1 at 11.

The forum-selection clause applies in relevant part to "any suit, action or other proceeding arising out of this Agreement or the subject matter hereof brought by any party hereto." Under Florida law, a court must assess whether a forum-selection clause is narrow or broad in scope. *See Inspired Capital, LLC v. Condé Nast*, 225 So.3d 980, 982 (Fla. 3d Dist. Ct. App. 2017). Forum-selection clauses that are limited to disputes "arising out of" the parties' contract are considered to be narrow in scope, while those using language such as "arising out of or relating to" are considered to be broad in scope. *Ibid.* (citing *Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 593 (Fla. 2013)).

For a narrow-scope clause that is limited only to those claims "arising from" the parties' contract, Florida law provides that its scope is limited only "to those claims that have a direct relationship to a contract's terms and provisions." *Ibid.* By contrast, for a broader-scope clause

5

that applies to those claims "relating to" the parties' contract, its scope extends to any claims that have "a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." *Ibid.* Such a significant relationship exists if "there is a 'contractual nexus' between the claim and the contract." *Ibid.*

Columbia argues that the forum-selection clause is narrow because it does not include the "relating to" language that is most commonly associated with broad-scope clauses. Doc. #39 at 11-14. But Florida law does not limit the category of broad-scope clauses only to those clauses that use the words "relating to." The most that can be said is that Florida law recognizes a distinction between narrower and broader clauses in general. *See Inspired Capital*, 225 So.3d at 982 (describing "basic types" of provisions and explaining how a "broad in scope" provision "typically" includes "claims or controversies 'arising out of *or relating to*' the subject contract" but without further suggestion that the specific words "relating to" must be used in order to qualify as a "broad in scope" provision) (quoting *Jackson*, 108 So.3d at 593).

The forum-selection clause in this case applies not only to actions that are "arising out of" the Dealer Agreement but also to actions that are "arising out of … the subject matter hereof." A natural reading of this language is that it is broad: that it extends beyond purely contract-based claims to claims that arise from the parties' dealings and relationship as contemplated under their written agreement. A forum-selection clause that extends to any claim "arising from the subject matter" of the parties' agreement is at least as broad as one that extends to any claim "relating to" the parties' agreement.

Other federal courts that have had occasion to consider similar "subject matter" language within a forum-selection clause have also found it to be broad and to encompass a wider range of claims than contract claims under the parties' agreement. *See, e.g., Belize Telecom, Ltd. v. Gov't*

*of Belize*, 528 F.3d 1298, 1309 n.13 (11th Cir. 2008) (forum-selection clause containing the "subject matter hereof" language extended beyond claims arising under specific agreements to include a corporate governance dispute that arose from subject matter of the agreements); *Hindi v. BirdEye, Inc.*, 2019 WL 4091425, at *4 (S.D. Fla. 2019) (forum-selection clause extending to any "action with respect to the subject matter of" the parties' customer agreement governed claim under the Telephone Consumer Protection Act); *Deseret Trust Co. v. Unique Inv. Corp.*, 2018 WL 8110959, at *6 (D. Utah 2018) (forum-selection clause containing the "subject matter hereof" language in two debt agreements governed tort claims relating to the management of money loaned under those agreements); *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 2610608, at *41 n.35 (S.D.N.Y. 2014) (referring to a forum-selection clause that covers the "subject matter hereof" the agreement at issue as "broad" and to cover tort claims).

A contractual nexus exists between a contract and a given claim "if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract," regardless of whether the claims are "founded in tort or contract law." *Inspired Capital, LLC*, 225 So.3d at 982 (quoting *Jackson*, 108 So.3d at 593-94). Columbia argues that Piper made two different sets of misrepresentations: the misrepresentations in the Dealer Agreement itself, which form the basis of Columbia's contract claims, and the misrepresentations made in October and November 2018 that Piper would engage in negotiations for a renewal agreement, which form, in part, the basis of Columbia's remaining tort and promissory estoppel claims. Doc. #39 at 17. But this is a distinction without a difference for present purposes. To the extent that Columbia's tort and estoppel claims reference the alleged promise made in Section 2.2 of the Dealer Agreement, which the negligent misrepresentation and promissory estoppel claims explicitly do, *see* Doc. #33 at 35-37 (¶¶ 152,

161, 164), they clearly have a contractual nexus to the Dealer Agreement. Further, even to the extent the claims are premised solely on the alleged misrepresentations that Piper made in 2018, these misrepresentations concern the (non)renegotiation and (non)renewal of the dealer relationship between Piper and Columbia—the very subject matter of the Dealer Agreement— and therefore clearly fall within the scope of the forum-selection clause. I therefore find that Columbia's remaining tort and promissory estoppel claims are governed by the forum-selection clause.

As for the statutory claims, Columbia's CUTPA claim is premised on the CFA claim, Doc. #33 at 30 (¶ 119), and consequently Columbia's forum-selection clause argument for the CUTPA claim rises and falls on its argument for its CFA claim. Columbia alleges that Piper violated the CFA by wrongfully failing to renew and/or terminating Columbia's franchise "without good cause." *Id.* at 28 (¶¶ 106, 109); C.G.S.A. § 42-133f(a). The CFA necessarily requires the existence of a preexisting agreement or relationship between the parties in order to apply. *See Stetzer v. Dunkin' Donuts, Inc.*, 87 F.Supp.2d 104, 114 (D. Conn. 2000) (declining to extend the scope of the CFA to prospective franchisees).

To be sure, it is true that "the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties" is not alone enough to trigger enforcement of a forum-selection clause. *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 638 (Fla. 1999). But the resolution of the CFA and CUTPA claims here necessarily requires reference to or construction of the Dealer Agreement itself. Columbia's amended complaint states that "Piper's unilateral and improper non-renewal of the Dealer Agreement" forms the basis of its CFA and CUTPA claims. Doc. #33 at 25 (¶ 95). Indeed, Columbia extensively cites the Dealer Agreement to support its contention that the CFA applies to the parties' relationship.

*See id.* at 8-15 (¶¶ 28-52). This is in contrast to a case that Columbia relies upon in which the complaint did not even "explicitly mention" the agreement between the parties and where one of the underlying statutory claims involved "legal duties" that "do not require a contract." *Verizon Wireless Personal Commc'ns, LP v. Bateman*, 264 So.3d 345, 351-52 (Fla. 2d Dist. Ct. App. 2019) (finding an arbitration provision did not apply to a statutory claim). In addition, to evaluate whether Piper failed to renew and/or terminated the parties' relationship without good cause will necessarily require an understanding of the specific terms of the Dealer Agreement and the performance of that agreement by the parties. Accordingly, I find that the forum-selection clause encompasses both Columbia's CFA claim and its CUTPA claim.

Because the forum-selection clause meets the first three enforceability requirements as set forth in the Second Circuit's decision in *Martinez v. Bloomberg*, the last inquiry is whether Columbia has shown under federal law that enforcement would be unreasonable or unjust. *See Martinez*, 740 F.3d at 227. For example, enforcement of the clause may be unreasonable or unjust if "'(1) [the clause] was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'" *Id.* at 228 (quoting *Phillips*, 494 F.3d at 392). These exceptions are "interpreted narrowly." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010).

Columbia argues that enforcement of the forum-selection clause as to the CFA claim contravenes a strong public policy of the State of Connecticut in favor of allowing it to litigate a CFA claim in the courts of Connecticut. It relies on a provision of the CFA stating that "[a]ny franchisee may bring an action for violation of sections 42-133e to 42-133g, inclusive, in the

[Connecticut] Superior Court." C.G.S.A. § 42-133g(a). It likewise relies on a separate anti-waiver provision of the CFA stating that "[a]ny waiver of the rights of a franchisee under sections 42-133f or 42-133g which is contained in any franchise agreement entered into or amended on or after June 12, 1975, shall be void." C.G.S.A. § 42-133f(f). According to Columbia, enforcement of the forum-selection clause in this case would contravene the strong public policy of Connecticut because it would deprive Piper of its right in violation of the CFA's anti-waiver provision to litigate its CFA claim in Connecticut.

I do not agree. The fact that the CFA allows a plaintiff to file a lawsuit in the state courts of Connecticut does not necessarily mean that it is the strong public policy of the State of Connecticut that any rights under the CFA must be litigated *only* in the courts of Connecticut rather than in any other court. The CFA, for example, does not go further to explicitly preclude forum-selection clauses in franchise agreements. *Compare Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (forum-selection clause unenforceable in light of California franchise statute providing that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void").

Instead, the CFA merely provides in precatory terms that a franchisee "may" bring an action under the CFA in Connecticut. It is far from surprising that this provision is limited to the state courts of Connecticut because the Connecticut legislature does not have authority to regulate the jurisdiction of courts outside the State of Connecticut. Accordingly, the most plausible inference to draw from the fact that the CFA allows for a right of action in Connecticut state court is that it is the public policy of Connecticut to allow for judicial enforcement of rights created under the CFA, not that it is the strong public policy of Connecticut that such judicial enforcement must occur only in the courts of Connecticut. Therefore, I conclude that

10

enforcement of the forum-selection clause with respect to the CFA claim would not contravene the strong public policy of Connecticut.[1]

I have also considered all public interest factors, *see Atlantic Marine*, 571 U.S. at 62 n.6 (listing factors), and it is not apparent to me why—in view of the parties' choice of Florida law—the public interest lies in the adjudication of this action in a Connecticut court. In *Atlantic Marine*, the Supreme Court made clear that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations," and that "[i]n all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." 571 U.S. at 66. This is not an unusual case. Accordingly, I will grant the motion to transfer in accordance with the parties' forum-selection agreement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to transfer (Doc. #36). The Clerk of Court shall TRANSFER this action to the Southern District of Florida. The remaining pending motions are DENIED as moot without prejudice to renewal in the Southern District of Florida.

---

[1] The parties cite and discuss precedent from the District of Connecticut involving forum-selection clauses and motions to transfer under 28 U.S.C. § 1404. *See Phoenix Surgicals, LLC v. Blackstone Med., Inc.*, 2011 WL 63992, at *3 (D. Conn. 2011); *Timberland Machs., and Irrigation, Inc. v. Echo, Inc.*, 2009 WL 996044, at *4 n.1 (D. Conn. 2009); *Sherman St. Assocs., LLC v. JTH Tax, Inc.*, 2004 WL 2377227, at *4-9 (D. Conn. 2004). Because these cases engage or reference multi-factor private interest balancing of the kind that is now precluded by the Supreme Court's 2013 decision in *Atlantic Marine*, these decisions are not particularly helpful here. Moreover, two of these cases recognize that "the CFA does not by itself render a forum-selection clause in a franchise agreement void." *Timberland Mach.*, 2009 WL 996044, at *4 n.1 (citing *Sherman Street Assocs.*, 2004 WL 2377227, at *4). The third case refers without citation to "the anti-forum-selection clause provision of the CFA," *Phoenix Surgicals*, 2011 WL 63992, at *3, despite that as discussed above there does not appear to be any provision in the CFA that explicitly bars forum-selection clauses.

It is so ordered.

Dated at New Haven this 6th day of October 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge